1

2

3

4

5

6

7

8  **IN THE UNITED STATES DISTRICT COURT**

9  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  RANDALL DUNHAM,                     No.  2:23-CV-2757-DMC-P

12          Plaintiff,

13      v.                              ORDER

14  ALIASGHAR MOHYUDDIN, et al.,        and

15          Defendants.                 FINDINGS AND RECOMMENDATIONS

16

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18  42 U.S.C. § 1983.  Pending before the Court is Defendants' motion for partial dismissal. See ECF

19  No. 22. Plaintiff has filed an opposition. See ECF No. 23. Defendants have filed a reply. See ECF

20  No. 24.

21          In considering a motion to dismiss, the Court must accept all allegations of

22  material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

23  Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

24  v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

25  738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

26  ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

27  395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

28  factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

1

1    In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

2    See Haines v. Kerner, 404 U.S. 519, 520 (1972).

3              Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

4    of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

5    notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly,

6    550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

7    to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain

8    more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

9    allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56.  The

10   complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at

11   570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

12   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

13   Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but

14   it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting

15   Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a

16   defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement

17   to relief." Id. (quoting Twombly, 550 U.S. at 557).

18             In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

19   outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

20   Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)

21   documents whose contents are alleged in or attached to the complaint and whose authenticity no

22   party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

23   and upon which the complaint necessarily relies, but which are not attached to the complaint, see

24   Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

25   of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

26   1994).

27   / / /

28   / / /

2

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff initiated this action with a pro se complaint filed on November 28, 2023. See ECF No. 1. In finding the complaint appropriate for service, the Court summarized Plaintiff's allegations as follows:

> Plaintiff names the following as defendants: (1) Aliasghar Mohyuddin, who at all times relevant to the action was the primary care provider at the California Health Care Facility (CHCF); (2) Salsbury, who at all times relevant to the action was a registered nurse at the E-yard facility at CHCF; and (3) K. Petersen, who at all times relevant to the action was the ADA coordinator at CHCF. Id. at 2.
>
> Plaintiff alleges that in August 2022 he arrived at CHCF on a medical transfer due to his vision impairment, which required a higher level of medical care. Id. at 2. In the same month, Plaintiff submitted a CDCR Form 1824 Reasonable Accommodation Request for Accommodation under the Americans with Disabilities Act (ADA). Id. In the form, Plaintiff requested a single cell due to substantial risk of harm. Id. In September 2022, Plaintiff filed a CDCR Form 7362 Health Services Request Form after he bumped into objects around the housing dorm unit he was in. Id. at 3. Later in September, Plaintiff was seen by Defendant Salsbury at the E-yard facility clinic, where Plaintiff was told that Defendant Mohyuddin would refer Plaintiff to optometry. Id.
>
> What followed was a series of requests submitted by Plaintiff. In October 2022, Plaintiff submitted another CDCR Form 7362 requesting to be moved to an ADA-accessible cell. Id. In November 2022, Plaintiff submitted another CDCR Form 7362, but this time requesting to see Defendant Mohyuddin because Plaintiff was having difficulties navigating his surroundings. Id. In December 2022, Plaintiff submitted a CDCR Form 7362 requesting to be seen by a retina specialist. Id. In January 2023, Plaintiff submitted a CDCR Form 1824 requesting to be moved into an ADA-accessible cell because his deteriorating vision put him in harm's way and at risk of being attacked by non-disabled inmates.
>
> In February 2023, Plaintiff was denied an ADA-accessible cell by Defendant Petersen. Id. at 4.
>
> In March 2023, Plaintiff was seen by the prison optometrist, seven months after Defendant Mohyuddin referred Plaintiff. Id. In the same month, Plaintiff submitted another CDCR Form 7362, stating that his vision is becoming worse, that he now sees shadows, and that he is at substantial risk for being attacked due to his disability. Id. In April 2023, Plaintiff was seen by a retina specialist in San Francisco. Id. He was told that he has optic atrophy, which causes rapid deterioration of vision. Id. In May 2023, Plaintiff submitted another CDCR Form 7362, requesting to be seen by Plaintiff's primary care provider and Defendant Mohyuddin due to pain Plaintiff was experiencing in his eyes. Id.

Defendant Mohyuddin did not answer the request. <u>Id.</u>

On May 18, 2023, Plaintiff fell and hit his head while trying to use the restroom in his cell. <u>Id.</u> at 5. Plaintiff experienced temporary blindness for approximately ten minutes. <u>Id.</u> Another inmate called an officer to inform him of the injury. <u>Id.</u> Later that month, Plaintiff submitted another CDCR Form 7362. <u>Id.</u> Plaintiff requested to be moved to another cell where he could receive a higher level of medical care. <u>Id.</u> Plaintiff alleges that on May 19, 2023, Defendant Mohyuddin stated that Plaintiff did not need additional nursing help. <u>Id.</u> On May 22, 2023, Plaintiff sustained an injury when he fell in the shower. <u>Id.</u> at 6.

On July 8, 2023, Plaintiff was battered by an inmate. <u>Id.</u> Plaintiff claims that he was unable to defend himself due to his vision impairment. <u>Id.</u> An X-ray exam showed that Plaintiff did not suffer any fractures. <u>Id.</u> Plaintiff was transferred to the Administrative Segregation Unit (ASU) for his own safety on the same day. <u>Id.</u>

On July 11, 2023, Plaintiff was moved to a new housing unit and received a new primary care provider, Dr. Naseer. <u>Id.</u> Later in July, Plaintiff began suffering pain in his face. <u>Id.</u> Dr. Naseer administered a physical exam and ordered a CT scan of Plaintiff. <u>Id.</u> Plaintiff was then informed that he had suffered two facial fractures as result of the attack on July 8. <u>Id.</u> Plaintiff was informed that he would be experiencing pain for a year or more. <u>Id.</u> In August 2023, Dr. Naseer transferred Plaintiff to a different unit where he could receive a higher level of care. <u>Id.</u> at 7. In September 2023, Plaintiff returned to a retina specialist, who informed Plaintiff that his condition required him to receive a higher level of care to avoid obstacles and prevent injuries. <u>Id.</u> at 7.

Plaintiff claims that Defendant Mohyuddin violated Plaintiff's rights under the Eighth Amendment's Cruel and Unusual Punishment Clause by ignoring Plaintiff's risk for being attacked and harmed because of his vision impairment. <u>Id.</u> at 8. Plaintiff also claims that Defendant Mohyuddin violated his rights under the Fourteenth Amendment Due Process Clause for denying accommodations for Plaintiff's disabilities. <u>Id.</u>

Plaintiff claims that Defendant Petersen's denial of accommodations for his disabilities violates the Fourteenth Amendment's Due Process Clause and the Eighth Amendment's Cruel and Unusual Punishment Clause. <u>Id.</u> at 4, 8. Plaintiff also claims that his rights under the ADA were violated. <u>Id.</u> at 4. Plaintiff claims that Defendant Salisbury violated his rights under the Fourteenth Amendment's Due Process Clause by not submitting Plaintiff's CDCR 7362 forms. <u>Id.</u>

ECF No. 10, pgs. 1-3.

On January 16, 2024, the Court directed E-service of Plaintiff's complaint on Defendants. <u>See</u> ECF No. 10. Defendants waived service and filed the currently pending motion for partial dismissal on April 8, 2024. <u>See</u> ECF No. 22.

/ / /

/ / /

/ / /

1

## II. DISCUSSION

2          In their motion for partial dismissal, Defendants argue: (1) Plaintiff fails to state a

3  viable claim against Defendants under Title II of the Americans with Disabilities Act (ADA), 42

4  U.S.C. § 12132; and (2) Plaintiff fails to allege facts sufficient to state a plausible Eighth

5  Amendment claim against Defendant Salisbury. See ECF No. 22 at 1. Defendants do not

6  otherwise challenge Plaintiff's Eighth Amendment claims against Defendants Mohyuddin and

7  Petersen. See id. For the reasons discussed below, the Court agrees with Defendants that, as

8  currently plead, the complaint is deficient and warrants partial dismissal.

9      **A.      ADA Claim**

10          Title II of the ADA covers state prison inmates.  Pennsylvania Dep't of Corr. v.

11  Yeskey, 524 U.S. 206, 213 (1998).  To present an ADA claim, an inmate must show: (1) they are

12  an individual with a disability; (2) they are qualified to participate in or receive the benefit of

13  some public entity's services, programs, or activities; (3) they were either excluded from

14  participation in or denied the benefits of the public entity's services, programs, or activities, or

15  was otherwise discriminated against by the public entity; and (4) such exclusion, denial of

16  benefits, or discrimination was by reason of their disability.  Simmons v. Navajo County, Ariz.,

17  609 F.3d 1011, 1021 (9th Cir. 2010) overruled in part on other grounds by Castro v. County of

18  Los Angeles, 833 F.3d 1060 (9th Cir. 2016).

19          For the purposes of the ADA, a disability is a physical or mental impairment that

20  substantially limits one or more major life activities.  Weaving v. City of Hillsboro, 763 F.3d

21  1106, 1111 (9th Cir. 2014).  To qualify, a disability must limit the ability of an individual to

22  perform a major life activity as compared to most people in the general population.  See Shields

23  v. Credit One Bank, N.A., 32 F.4th 1218, 1226 (9th Cir. 2022).  "[M]ajor life activities include,

24  but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating,

25  sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading,

26  concentrating, thinking, communicating, and working."  Id. (citing 42 U.S.C. § 12102(2)(A)).

27  / / /

28  / / /

5

1    To be cognizable, a Title II claim for compensatory damages must allege that

2    Defendants were deliberately indifferent to Plaintiff's need for accommodation.  See Duvall v.

3    Cnty. of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11,

4    2001).  To show deliberate indifference, Plaintiff must have provided notice to Defendants by

5    identifying specific reasonable and necessary accommodations.  Id. (citing Memmer v. Marin

6    County Courts, 169 F.3d 630, 633 (9th Cir.1999)).  But providing notice is unnecessary if the

7    need for accommodation is "obvious" or is required by statute or regulation.  Id.  Plaintiff must

8    also allege that once notice was provided, Defendants failed to "undertake a fact-specific

9    investigation to determine what constitutes a reasonable accommodation."  Id. Upon receiving

10   notice, Defendants "have a duty to gather sufficient information from [Plaintiff] and qualified

11   experts as needed to determine what accommodations are necessary."  Id. (citing Wong v.

12   Regents of the University of California, 192 F.3d 807, 818 (9th Cir.1999).  Ultimately, the

13   "failure to act must be a result of conduct that is more than negligent[] and involves an element of

14   deliberateness."  Id.

15   Defendants argue "Plaintiff's ADA claim against these prison officials in their

16   individual capacities fail as a matter of law, and he cannot seek to vindicate rights afforded by the

17   ADA under the guise of a constitutional violation." See ECF No. 22-1 at 1. That is, Defendants

18   argue "Plaintiff cannot bring an ADA claim against Defendants in their individual capacities

19   'because the proper defendant in such actions is the public entity responsible for the alleged

20   discrimination.'" See id. at 4.

21   Plaintiff, however, argues Defendants Mohyuddin and Petersen are personally

22   liable because they were acting under the color of the law. See ECF No. 23 at 2.

23   In reply, Defendants argue Plaintiff fails to adequately support his opposition to

24   dismissal of his ADA claim, nor can he because "[w]ell established law makes clear that Title II

25   of the ADA applies only to public entities – not individuals." See ECF No. 24 at 2-3.

26   / / /

27   / / /

28   / / /

6

1    The Court agrees.  To present an ADA claim, Plaintiff needed to show he was

2    "either excluded from participation in or denied the benefits of the public entity's services,

3    programs, or activities, or was otherwise discriminated against by the *public entity*…."  <u>Simmons</u>

4    609 F.3d at 1021 (emphasis added).  Here, Plaintiff has not named a public entity and Plaintiff

5    cannot proceed with his ADA claims against the individual defendants.  <u>See</u> <u>Vinson v. Thomas</u>,

6    288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983

7    against a State official in her individual capacity to vindicate rights created by Title II of the

8    ADA"); <u>see also</u> <u>Heinke v. County of Tehama Sheriff's Dept.</u>, 2013 WL 3992407, at *7 (E.D.

9    Cal. Aug. 1, 2013); <u>King v. Hubbard</u>, 2009 WL 4052721, at *7 (E.D. Cal. Nov. 19, 2009)

10    ("Individual liability is precluded under Title II of the Americans with Disabilities Act, and

11    Plaintiff may not pursue his ADA claim against the individual defendants named").

12    While Plaintiff cannot proceed on his ADA claims against the named individual

13    defendants, Plaintiff may pursue his ADA claims against the appropriate public entity or

14    individual defendants in their official capacities because the ADA abrogates state sovereign

15    immunity under the Eleventh Amendment.  <u>See</u> <u>Goodman v. Georgia</u>, 126 S.Ct. 877 (2006).  The

16    Court will recommend that Plaintiff be provided leave to amend to name the appropriate public

17    entity and/or name the individual defendants in both their individual and official capacities.[1]

18    **B.    <u>Deliberate Indifference Claim</u>**

19    The treatment a prisoner receives in prison and the conditions under which the

20    prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

21    and unusual punishment.  <u>See</u> <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993); <u>Farmer v. Brennan</u>,

22    511 U.S. 825, 832 (1994).  The Eighth Amendment ". . .embodies broad and idealistic concepts of

23    dignity, civilized standards, humanity, and decency." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102

24    (1976).  Conditions of confinement may, however, be harsh and restrictive.  <u>See</u> <u>Rhodes v.</u>

25    <u>Chapman</u>, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

26    "food, clothing, shelter, sanitation, medical care, and personal safety." <u>Toussaint v. McCarthy</u>,

27    801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when

28    ───────────────────

[1]    Currently, the individual defendants are sued in their individual capacities only.  <u>See</u> ECF No. 1

7

1  two requirements are met: (1) objectively, the official's act or omission must be so serious such

2  that it results in the denial of the minimal civilized measure of life's necessities; and (2)

3  subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

4  inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

5  official must have a "sufficiently culpable mind."  See id.

6          Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

7  injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105;

8  see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health

9  needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by

10  Sandin v. Conner, 515 U.S. 472 (1995).  An injury or illness is sufficiently serious if the failure to

11  treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and

12  wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled

13  on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see

14  also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness

15  are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2)

16  whether the condition significantly impacts the prisoner's daily activities; and (3) whether the

17  condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122,

18  1131-32 (9th Cir. 2000) (en banc).

19          The requirement of deliberate indifference is less stringent in medical needs cases

20  than in other Eighth Amendment contexts because the responsibility to provide inmates with

21  medical care does not generally conflict with competing penological concerns.  See McGuckin,

22  974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

23  decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

24  1989).  The complete denial of medical attention may constitute deliberate indifference.  See

25  Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

26  treatment, or interference with medical treatment, may also constitute deliberate indifference.  See

27  Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate

28  that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

8

1    Defendants argue, and Plaintiff does not oppose (ECF No. 23 at 1), Plaintiff fails

2  to allege sufficient facts to state a plausible Eighth Amendment deliberate indifference claim

3  against Defendant Salisbury. See ECF No. 22-1 at 1-2. Specifically, Defendant argues Plaintiff

4  alleges only that: (1) Defendant Salisbury is a registered nurse who saw Plaintiff in the E-yard on

5  or about September 2022; and (2) communicated to Plaintiff that Defendant Mohyuddin had

6  referred Plaintiff to optometry. See id. at 6. Defendant thus argues "Plaintiff has failed to allege

7  that any inadequacy or delay in treatment was caused by Defendant Salisbury's deliberate

8  indifference." See id.

9    Defendants' argument is well taken, and this Court agrees. Plaintiff has not alleged

10  Defendant Salisbury has either denied or delayed Plaintiff medical attention. As such, Plaintiff's

11  allegations do not give rise to an Eighth Amendment deliberate indifference claim against

12  Defendant Salisbury.  Given that Plaintiff does not oppose this portion of Defendants' motion, the

13  Court will recommend that Plaintiff's claim against Defendant Salisbury be dismissed without

14  leave to amend.

15

16                               **III.  CONCLUSION**

17    Based on the foregoing, the undersigned orders and recommends as follows:

18    1.    It is ORDERED that the Clerk of the Court is directed to randomly assign a

19  District Judge to this case.

20    2.    It is RECOMMENDED that Defendants' partial motion to dismiss, ECF

21  No. 22, be GRANTED.

22    3.    It is RECOMMENDED that Plaintiff's ADA claim be DISMISSED as

23  against all individual defendants with leave to amend to name the appropriate public entity and/or

24  name Defendants in their individual and official capacities.

25  / / /

26  / / /

27  / / /

28  / / /

9

1         4.      It is RECOMMENDED that Plaintiff's Eighth Amendment deliberate

2   indifference claim against Defendant Salisbury be DISMISSED with prejudice.

3         These findings and recommendations are submitted to the United States District

4   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

5   after being served with these findings and recommendations, any party may file written

6   objections with the court.  Responses to objections shall be filed within 14 days after service of

7   objections.  Failure to file objections within the specified time may waive the right to appeal.  See

8   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9

10   Dated:  January 28, 2025

11

12   DENNIS M. COTA
     UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28